**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**JENNIFER GUZMAN-MUELLING,**

      **Plaintiff,**

           **Case No. 1:24-cv-527**

     v.

           **JUDGE DOUGLAS R. COLE**

**LARRY A. ALEXANDER &**
**ASSOCIATES, LLC, et al.,**

      **Defendants.**

## <u>OPINION AND ORDER</u>

Plaintiff Jennifer Guzman-Muelling worked for Defendants Larry A. Alexander & Associates, LLC, and Larry A. Alexander as a "Mental health Therapist intern" from 2020 to 2024. (Compl., Doc. 1, #3–4). But eventually, their relationship soured—Defendants stopped paying Plaintiff. That began on May 19, 2023, and continued through her resignation more than a year later on June 7, 2024. (*Id.*). Guzman, who still has not been paid, sued. She alleges that Defendants' failure to pay her violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq.; the Ohio Minimum Fair Wage Standards Act (OMWA), Ohio Revised Code § 4111 et seq.; and the Ohio Prompt Pay Act (OPPA), Ohio Revised Code § 4113.15. (*Id.* at #1). However, despite being served, neither Defendant appeared to defend themselves. As a result, Guzman sought and received an entry of default from the Clerk's Office. (Docs. 7, 8). Guzman now moves the Court for default judgment against both Defendants. (Doc. 10). For the reasons discussed below, the Court **GRANTS**

Guzman's Motion for Default Judgment (Doc. 10) and enters judgment in the amount of $25,115.19.

### BACKGROUND[1]

Defendant Larry A. Alexander & Associates, LLC, is an Ohio corporation offering mental health services. (Doc. 1, #2). Defendant Larry A. Alexander owns that LLC. (*Id.*). Defendants (collectively "Alexander") employed Guzman as a mental health therapist intern beginning in 2020. (*Id.* at #3). Guzman's job typically consisted of conducting patient visits Monday through Friday each week. (*Id.*). These visits took place either in person at Alexander's office, via a telehealth visit, or over the phone. (*Id.*). Following each visit, she updated the patient chart and completed visit notes. (*Id.*). On the days when Guzman conducted visits in person at Alexander's office, she would arrive 15 minutes before the first scheduled appointment to check for any messages, return patient calls, schedule visits, and prepare. (*Id.*).

After May 19, 2023, Alexander failed to pay Guzman for any patient visits she conducted and for any other time worked. (*Id.*). Although Alexander did provide two paychecks to Guzman after that date, those checks bounced, and Guzman never received the funds. (*Id.*). Given her professional obligations toward her patients, Guzman continued to work at Alexander & Associates, LLC, until June 7, 2024. (*Id.* at #3–4). After her pay ceased, she conducted 775 more visits in 2023, and another

---

[1] When considering a motion for a default judgment, the Court accepts as true all well-pleaded allegations except those relating to the amount of damages. *Beaver v. Eastland Mall Holdings, LLC*, No. 2:20-cv-485, 2021 WL 1084610, at *2 (S.D. Ohio Mar. 22, 2021). Accordingly, the Court's summary of the factual background rests on the allegations in Plaintiff's Complaint (Doc. 1).

501 visits in 2024. (*Id.* at #4). That means she remains uncompensated for her time spent seeing 1,276 patients. (*Id.*).

A few months after her June resignation, Guzman sued Defendants for failing to pay her wages. (Doc. 1). She asserts three claims: (1) failure to pay her minimum wage for the hours she worked between May 19, 2023, and June 7, 2024, in violation of the FLSA and OMWA; (2) failure to compensate her for overtime in violation of the same; and (3) failure to pay her within 30 days in violation of the OPPA. *(Id.* at #4–7). Guzman properly served both Defendants on January 25, 2025. (Doc. 5, #28). Once served, neither Defendant answered nor otherwise pleaded in response to the Complaint. So, upon Guzman's application, (Doc. 7), the Clerk entered default on June 2, 2025, (Doc. 8). But Guzman then went silent. So, on September 3, 2025, this Court issued an order requiring her to move for default judgment or show good cause as to why the case should not be dismissed for failure to prosecute. (Doc. 9). A few weeks later, on September 25, 2025, Guzman moved for default judgment. (Doc. 10). There, Guzman provides an affidavit in which she details that, in 2023, she completed a total of 775 patient visits, working 161 of those days in Alexander's physical office. (Doc. 10-1, #51). And Guzman recounts that, in 2024, she completed 501 patient visits and worked 114 days in the office. (*Id.* at #52).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 55 provides a two-step procedure for default judgments. A plaintiff seeking entry of default against a defendant must first show, "by affidavit or otherwise," that the defendant "has failed to plead or otherwise

defend." Fed. R. Civ. P. 55(a). Upon such showing, the clerk must enter default. *Id.* And at that point, the complaint's factual allegations concerning liability, but not damages, are taken as true. *Beaver*, 2021 WL 1084610, at *2; *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Next, unless the claim "is for a sum certain or a sum that can be made certain by computation," the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b).

Before granting default judgment, a court must satisfy itself of two things. First, the court must verify that it has both subject-matter jurisdiction over the action and personal jurisdiction over any defendant against whom it grants a default judgment. *See Am. Clothing Express, Inc. v. Cloudflare, Inc.*, No. 2:20-cv-2007, 2022 WL 256337, at *1 (W.D. Tenn. Jan. 26, 2022). Second, the court must determine whether the facts in the complaint state a claim for relief against the defendant. *See Harrison v. Bailey*, 107 F.3d 870, 1997 WL 49955, at *1 (6th Cir. Feb. 6, 1997) (Table) ("Default judgments would not have been proper due to the failure to state a claim against these defendants." (citation omitted)). Stated differently, to warrant default judgment, "the complaint must be able to survive a Rule 12(b)(6) motion to dismiss." *Buxton v. Hartin Asset Mgmt., LLC*, No. 1:22-cv-600, 2023 WL 4861724, at *6 (W.D. Mich. July 31, 2023) (citation omitted).

Assuming the court has jurisdiction and the plaintiff has presented a plausible claim, the court then "must conduct an inquiry" to establish the appropriate damages.

4

*Beaver*, 2021 WL 1084610, at *2 (citation omitted). To do that, the court may either hold an evidentiary hearing, Fed. R. Civ. P. 55(b)(2), or it may determine damages without a hearing "if the damages are capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits," *Beaver*, 2021 WL 1084610, at *2 (cleaned up).

## LAW AND ANALYSIS

To begin, the Court concludes that Guzman has satisfied Federal Rule of Civil Procedure 55(a)'s requirement for a default. Defendants failed to plead or otherwise defend this action despite Guzman serving them on January 25, 2025. (Doc. 5). In her Motion for Default Judgment, Guzman now seeks damages on her first cause of action—Alexander's failure to pay her the minimum wage in violation of the FLSA and OMWA. (Doc. 10, #45). Guzman also seeks damages on her third cause of action—Alexander's failure to pay her wages in a timely manner under the OPPA.[2] (*Id.* at #47). For the reasons explained below, the Court concludes that Guzman is entitled to default judgment on her claims under the OMWA and OPPA, but not those under the FLSA, and awards damages under Rule 55(b)(2).

## A.    The Court Has Jurisdiction over this Matter.

Jurisdiction does not pose an issue. Begin with subject matter jurisdiction. Guzman asserts three claims, two of which are under the FLSA, a federal law.[3] (Doc.

---

[2] Plaintiff does not seek default judgment on her second cause of action, her overtime claim. (Doc. 10, #39 n.1).

[3] Guzman advances her first two "causes of action" under both federal and state law, while her third is purely a state-law claim. (Doc. 1, #4–7). The Court follows that framing for the

1, #1). This Court has federal question jurisdiction over the FLSA claims. 28 U.S.C. § 1331. As a result, the Court can exercise supplemental jurisdiction over Guzman's remaining state-law claims.[4] 28 U.S.C. § 1367(a). So, the Court is secure in its subject matter jurisdiction.

Turn next to personal jurisdiction. Defendant Larry A. Alexander & Associates, LLC, is an Ohio corporation that does business in the Southern District of Ohio. (Doc. 1, #2).[5] And Guzman alleges that, to her knowledge and belief, Defendant Larry A. Alexander is a resident of Ohio. (*Id.*). Thus, based on the well-pleaded allegations in the Complaint, Defendants are "at home" in Ohio and subject to this Court's personal jurisdiction. *IHF Ltd. v. Myra Bag*, 391 F. Supp. 3d 760, 768 (N.D. Ohio 2019) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

---

purposes of this opinion, but notes that in a more technical sense, Guzman's Complaint brings *five* claims, two under the FLSA, two under the OMWA, and one under the OPPA.

[4] Although the Court ultimately concludes that Guzman fails to plausibly allege her FLSA claims, the federal claims were not so frivolous as to deprive the Court of its subject-matter jurisdiction. To the contrary, she merely failed to plausibly allege FLSA coverage. And because this Opinion and Order does not dismiss Guzman's FLSA claim and is instead determining damages, the Court retains jurisdiction over the state-law claims (which are based on the same conduct as the federal claims) under 28 U.S.C. § 1367(a). Indeed, even if the Court were to dismiss the federal claim, it could still retain jurisdiction at its discretion. *See Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412–13 (6th Cir. 1991) (explaining that district courts have "discretion to decide a pendent state law claim once the federal basis for jurisdiction is dismissed" if the interests of judicial economy outweigh the benefits of allowing an Ohio court to decide the state-law claim (quotation omitted)).

[5] See also Ohio Secretary of State, Business Search, https://perma.cc/SU8E-NJ7B (last visited June 8, 2026) (showing Larry A. Alexander & Associates, LLC, as a domestic LLC).

**B.    Plaintiff Plausibly Alleges That Defendants Are Liable, but Only Under Ohio Wage Laws, Not the FLSA.**

The Court next turns to whether Guzman sufficiently states a claim for relief against the Defendants. Her first cause of action alleges that Alexander failed to pay her minimum wage, violating both the FLSA and OMWA. (Doc. 1, #4–5). The FLSA requires employers to pay the federal minimum wage, while the OMWA requires employers to pay the Ohio minimum wage. Guzman's second cause of action alleges that Alexander failed to compensate her one-and-a-half times her normal pay rate for overtime hours worked, again, in violation of both the FLSA and OMWA. (*Id.* at #5–6). Her third cause of action alleges that Alexander failed to pay wages owed to her on the 1st and 15th day of each month for the preceding 30 days as the OPPA requires. (*Id.* at #6). However, as noted above, Guzman moves for default judgment only on her first and third causes of action.

The Court starts with the statutes on which Guzman relies. While the FLSA and OMWA are similar, and share several definitions, they cover different employees, and importantly, allow recovery of different wage rates and different liquidated damages. Turning to the FLSA first, the Court finds that Guzman fails to plausibly allege that she is a covered employee, and thus declines to grant her judgment on those claims. However, she does plausibly allege her claims under the OMWA (albeit at a lower rate than she requests) and the OPPA.

The FLSA provides federal wage protection for employees. 29 U.S.C. § 201, et seq. Most relevant here, it requires employers to pay non-exempt employees a set minimum wage. *Id.* § 206(a). However, those protections (and hence the ability to

7

bring FLSA claims) extend only to statutorily covered employees. *Dep't of Lab. v. Americare Healthcare Servs., LLC*, 762 F. Supp. 3d 666, 682 (S.D. Ohio 2025).

The Complaint is clear that Guzman worked without pay for over a year. (Doc. 1, #3). It also establishes that she was an employee—specifically, she was employed as a mental health intern at Alexander & Associates—and that Defendants[6] were her employers. (*Id.*). But it does not allege sufficient facts for the Court to infer that she was a *covered* employee.

Coverage can arise in two ways—either because the employee is working in interstate commerce (individual coverage) or because she is working for an enterprise that is engaged in such commerce (enterprise coverage). *Dep't of Lab.*, 762 F. Supp. 3d at 682; *see also* 29 U.S.C. §§ 203(s)(1), 207(a)(1). "A plaintiff need only establish one or the other." *Walsh v. Americare Healthcare Servs., Inc.*, No. 2:21-cv-5076, 2023 WL 2544509, at *4 (S.D. Ohio Mar. 16, 2023) (citation omitted).

---

[6] Liability typically does not flow from an LLC to its owner. And here, Guzman was presumably an "employee" of Larry A. Alexander & Associates, not Alexander himself, at least in the traditional sense of that term. However, in drafting the FLSA, Congress chose to broaden the definition of employer for the purpose of recovering unpaid wages. *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) *superseded by rule on other grounds*, *M.J. v. Akron City Sch. Dist. Bd. of Ed.*, 1 F.4th 436 (6th Cir. 2021). The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Courts have interpreted this language as adopting an "economic reality" test, under which FLSA liability extends to "individuals who are chief corporate officers of the business, have a significant ownership interest in the business, control significant aspects of the business's day-to-day functions, and determine employee salaries and make hiring decisions." *Diaz v. Longcore*, 751 F. App'x 755, 758 (6th Cir. 2018) (citations omitted). Alexander, as an individual with an ownership interest in Larry A. Alexander & Associates, and who "exercised significant operational control over issues such as firing, hiring, rates of pay, and hours worked," meets that definition. (Doc. 1, #2). So, that means that Alexander is plausibly responsible for any liability that the entity has to Guzman under the FLSA (or the OMWA, which adopts the FLSA's definitions). Ohio Revised Code § 4111.02 (citing Ohio Const. art. II, § 34a).

Guzman appears to rely on enterprise coverage here. She states in her Complaint that Alexander "constituted an enterprise engaged in commerce within the meaning of the FLSA." (Doc. 1, #2). The FLSA covers employers engaged in commerce where:

> (i) [the employer] has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

> (ii) [the employer] is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)

29 U.S.C. § 203(s)(1)(A).

In her motion for default judgment, Guzman claims that Alexander meets both of these criteria. As to the first, she says Alexander had employees engaged in commerce since they "charged clients for the patient visits and other services provided by the Mental Health Therapists" and billed out-of-state insurance companies. (Doc. 10, #41–42). Guzman then argues that Alexander also satisfies the monetary element because the billable hours of all providers for 2023 totaled approximately $740,950. (*Id.* at #42–43).

There is one problem though—neither allegation appears in the Complaint. And here, like it would when ruling on a Rule 12(b)(6) motion, the Court confines its analysis to the pleadings. *Reid v. City of Detroit*, No. 18-13681, 2021 WL 3286677, at *3 (E.D. Mich. Aug. 2, 2021) ("Entry of a default judgment is only warranted when there is a sufficient basis in the *pleadings* for a judgment against the defendant at issue." (emphasis added)); *Wooten v. McDonald Transit Assocs., Inc.,* 788 F.3d 490,

9

496 (5th Cir. 2015) ("Put another way, '[t]he defendant is not held to admit facts that are not well-*pleaded* or to admit conclusions of law.'" (emphasis added)); *see also Harrison*, 1997 WL 49955, at *1 (finding that default judgment "would not have been proper due to the failure to state a claim against the[] defendants"). The Complaint only alleges that "Defendants were a covered 'employer' as that term is defined in the FLSA," and that they "engaged in commerce." (Doc. 1, #2). It contains no allegations that allow the Court to plausibly infer the second criteria—that annual revenue at the business exceeds $500,000. And while Guzman does offer factual support for that proposition in the present motion, those averments have not been deemed admitted by Defendants' defaults and so cannot be the basis for an award. So, without sufficient allegations in the Complaint, this Court declines to grant default judgment as to Guzman's FLSA claim.

Guzman experiences more success, though, with her alleged OMWA violations. Ohio Revised Code § 4111.02 states that "[e]very employer, as defined in Section 34a of Article II, Ohio Constitution, shall pay each of the employer's employees at a wage rate of not less than the wage rate specified in Section 34a of Article II, Ohio Constitution." That constitutional provision in turn adopts the FLSA's definitions of "employer" and "employee." Ohio Const. art. II, § 34a. And as noted above, Guzman has pleaded that she is an employee and Alexander her employer under those definitions. (*See* Doc. 1, #2).

Like the FLSA, the OMWA also has a coverage requirement. Only businesses exceeding a certain gross revenue must pay the (higher) Ohio minimum wage, while

all others must pay the federal minimum wage. *Tucker v. Ron Hall's Famous Final Cleaning Co.*, No. 1:24-cv-215, 2025 WL 1248366, at \*4 (S.D. Ohio Apr. 30, 2025) (first citing Ohio Const. art. II, § 34a; and then citing *State Minimum Wage Laws*, U.S. Dep't of Lab. (last updated Jan. 1, 2026), https://perma.cc/S6K3-2VVP). In 2023, the Ohio minimum wage was $10.10 per hour, and the gross revenue threshold was $372,000, while in 2024, they were raised to $10.45 and $385,000, respectively.[7]

Here, as the Court already discussed, Guzman did not plead any facts to allow the Court to infer Alexander's gross revenue. But, unlike those based on the FLSA, that is not fatal to her state law claims, as the OMWA and Ohio Constitution still require that businesses below that threshold pay employees the federal minimum wage of $7.25. Ohio Const. art. II, § 34a.

In sum, Guzman plausibly alleges that Alexander failed to pay her for her hours worked between May 2023 and June 2024. (Doc. 1, #4–5). And under the facts she alleges, she is entitled to damages at the $7.25 per hour federal rate. Further, she is entitled to the additional two times liquidated damages that the OMWA provides. Ohio Rev. Code § 4111.14(J) ("[D]amages shall be calculated as an additional two times the amount of the back wages.").

Finally, the Court turns to Guzman's third cause of action—her claim under the OPPA. That statute holds an employer liable for an additional six percent of the unpaid wages if the employer fails to pay an employee her wages for thirty days or

---

[7] *See* Ohio Department of Commerce, "State of Ohio 2023 Minimum Wage" poster, https://perma.cc/W5ES-9Q29, and "State of Ohio 2024 Minimum Wage" poster, https://perma.cc/N3DW-8Q3W.

11

more beyond the regularly scheduled payday or—as is the case here—where no regularly scheduled payday is applicable, for sixty days beyond when wages became payable or when a claim was filed. Ohio Rev. Code § 4113.15(B). While Guzman does not allege a "regularly scheduled payday," or when she was supposed to be paid, at the very least it has been more than sixty days since she filed the present lawsuit. So she sufficiently states this claim.

## C. Guzman is Entitled to Damages for the Violation of the OMWA and the OPPA.

Now that the Court has found that it has jurisdiction, and that Guzman pleads at least some viable claims, it must determine whether damages can be ascertained, or if a further hearing is needed. In her Complaint, Guzman asserts that Defendants failed to pay her for 645.83 hours in 2023 and 417.50 hours in 2024 for a total of 1,063.33 unpaid hours of work. (Doc. 1, #4–5). Based on Ohio's minimum wage rate for each of those years (not the lower, federal rate the Court above found applies), she calculates her unpaid wage as $6,522.88 in 2023 and $4,362.88 in 2024, or $10,885.76 total. (*Id.*). She does not state an amount for her OPPA claim. (*Id.* at #6).

But her damages request in her Motion for Default Judgment is different. (Doc. 10, #45–48). There, she states that Defendants failed to pay her for 686.08 hours in 2023 (40.25 hours more than alleged in the Complaint) and 446 hours in 2024 (28.50 hours more than alleged in the Complaint). (*Id.* at #46–47; Doc. 1, #4–5). Those extra hours appear to stem from a change in litigation strategy. At default judgment Guzman is no longer pursuing her missing overtime pay claim, which was based on the 15 minutes she arrived early on each day she worked in office. (Doc. 10, #39 n.1).

12

Instead, she now, for the first time, counts those hours as part of her total missing wages under her first cause of action. So how should the Court settle this discrepancy? Those extra hours, after all, are alleged elsewhere in the Complaint. (Doc. 1, #5–6). On the other hand, they only make an appearance under the separate count on which Guzman does not currently seek judgment. (*Id.*).

The Court settles this by focusing on the actual question at hand—what damages are supported by *the record*. Remember, the Court only accepts the allegations in the Complaint as true regarding liability and must ascertain damages from some sort of *evidence*—usually detailed affidavits, or if needed, a damages hearing. *Beaver*, 2021 WL 1084610, at *2. So, while the Court has some hesitancy about Guzman changing tactics at the default judgment stage, because the Court has already found liability based on the Complaint's allegations, what ultimately matters is what damages the evidence supports. On that front, Guzman provides a sworn affidavit. (*See* Doc. 10-1). There, she states how long she spent working on each patient visit (50 minutes), the number of patient visits in each year, and the number of days she worked in the facility each year, plus the fact that she worked an additional 15 minutes each day she worked in Alexander's facility. (*Id.* at #51–52). And, of course, that she was not compensated for any of that time. (*Id.*). Based on that sworn testimony, the Court, after doing its own calculations, finds that Alexander failed to compensate Guzman for 686.08 hours worked in 2023 and 446 hours worked in 2024, in line with her request in the present motion. (*See* Doc. 10, #45–48).

As found above, Guzman is only entitled to the federal minimum wage of $7.25 per hour under the OMWA. Based on that rate, she is owed $8,207.58 in unpaid wages, as well as an additional $16,415.16 in liquidated damages. She is also entitled to an additional six percent on her unpaid wages under the OPPA, adding another $492.45. In total then, she is entitled to, and the Court awards against Defendants, $25,115.19 in damages.

## CONCLUSION

For the reasons explained above, the Court **GRANTS** Guzman's Motion for Default Judgment (Doc. 10) and directs the Clerk to **ENTER JUDGMENT** in the amount of $25,115.19. Defendants Larry A. Alexander & Associates, LLC, and Larry A. Alexander are liable to Guzman for this amount. The Court further directs the Clerk to **TERMINATE** this matter on the Court's docket.

**SO ORDERED.**

July 8, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

14